UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

RUDY A. COLON and ELVIN AQUINO,

                                             Case No. 23-cv-07127

                   Plaintiffs,

               -against-

YAARON LLC, AARON JUNGREIS, and         **COMPLAINT**
MEIR ROTHMAN,


                           Defendants.
---------------------------------------------------------------X

       Plaintiffs RUDY A. COLON ("Colon") and ELVIN AQUINO ("Aquino") (collectively, "Plaintiffs"), by their attorneys, RAPAPORT LAW FIRM, PLLC, as and for their Complaint, allege as follows:

## PRELIMINARY STATEMENT

       1.      This action is brought pursuant to the New York Labor Law ("NYLL") Article 19 § 663, 12 New York Codes, Rules and Regulations ("NYCRR"), Part 141 and NYLL Article 6 § 190 *et seq.*, the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, ("FLSA") to recover unpaid overtime wages, minimum wages, and other wages owed to Plaintiffs, who worked at apartment buildings owned, controlled and/or operated by Defendants in New York County, New York.

       2.      Plaintiffs also assert claims against Defendants for their failure to properly pay Plaintiffs their wages on a weekly basis as required by the NYLL Article 6, § 191.

       3.      At all relevant times, defendants Yaaron LLC ("Yaaron"), Aaron Jungreis ("Jungreis") and Meir Rothman ("Rothman") (collectively, "Defendants") operated as a unified and centrally-controlled real estate enterprise that owns and controls apartment buildings ("Defendants' Buildings") in New York City.

## JURISDICTION AND VENUE

4.    Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331 because this case arises under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*.

5.    This action further invokes the supplemental jurisdiction of this Court to consider claims arising under the NYLL (e.g., New York Wage Payment Act; NY Labor Law §§ 191, 193, 195, and 12 N.Y.C.R.R. Part 141-1.9, 2.10, Part 142).

6.    Venue as to Defendants is proper in this judicial district, pursuant to 28 U.S.C. §1391. Defendants transact business and have agents in the Southern District and are otherwise within this Court's jurisdiction for purposes of service of process. Defendants operate facilities and employed Plaintiffs in this judicial district, namely in New York County.

7.    This Court has personal jurisdiction over the Defendants, pursuant to New York Civil Practice Law and Rules § 301, in that, *inter alia*, Defendants reside and/or transact business within this State, employed Plaintiffs within the State of New York and otherwise engaged in conduct that allows for the exercise of jurisdiction as permitted by the Constitution of the United States and the law of the State of New York, and accordingly may be served with process pursuant to Rule 4(h)(1), Fed.R.Civ.P.

## THE PARTIES

**Plaintiffs:**

**Colon.**

8.    Colon is an adult, natural person who resides in New York County, New York.

9.    Colon was an employee of Defendants from approximately February 2016 to on or about May 19, 2023.

2

10.    Colon was assigned by Defendants to work as superintendent of Defendants' approximately 50-unit apartment building located at 645 W. 160th Street, New York, New York ("645 W. 160").

11.    Colon served as 645 W. 160's superintendent, and he also performed renovation and construction duties that were far afield from superintendent responsibilities, including, *inter alia*, carpentry, flooring replacement and more.

12.    In addition, Colon was dispatched to other of Defendants' Buildings in order to perform construction and renovation work.

13.    On other occasions, Colon was required to assume superintendent duties at other buildings owned and/or controlled by Defendants, namely: 526 W. 161st Street, New York, New York ("526 W. 161").

14.    In or about 2017-2018, for a period of approximately seven months, Colon simultaneously served as superintendent of 645 W. 160 and 526 W. 161.  He received no additional pay for working as superintendent of two buildings, even though this resulted in his working extreme overtime hours.

15.    Virtually all of Colon's duties involved manual work, including, *inter alia*, cleaning, lifting, carrying building supplies, painting, light plumbing, sweeping, and similar tasks.

**Aquino.**

16.    Aquino is an adult, natural person who resides in New York County, New York.

17.    From in or about March 2016 to approximately March 2023, Aquino was employed by Defendants as a porter at 645 W. 160.

18.    Virtually all of Aquino's duties, which included cleaning and handling garbage and recycling, involved manual work.

19.    At all times relevant to his claims, Aquino had the status of Defendants' employee, and he was entitled to the protections and rights afforded by the FLSA and NYLL.

**Defendants:**

20.    Defendants operate as a unified enterprise for a common business purpose, to wit: directly and/or indirectly owning, managing and controlling apartment buildings in New York City, which are nominally titled in the names of title-holding companies.

21.    Defendants' business enterprise involves the ownership, management and control of rental apartment buildings, including, *inter alia*, multiple apartment buildings in the Washington Heights neighborhood of Manhattan.

22.    Jungreis and Rothman directly and/or indirectly own and/or control apartment buildings in Manhattan, including but not limited to: 638 West 160th Street; 645 West 160th Street; 376 West 127th Street a/k/a 175 Morningside Avenue; 510 West 146th Street;  and 617 West 143rd Street.

**Individual Defendants.**

***Jungreis.***

23.    Upon information and belief, Jungreis is an adult, natural person who has an office for the conduct of business located at 38 East 29th Street, Fifth Floor, New York, New York and 152 West 57th Street, 5th Floor, New York, New York 10019.

24.    Jungreis is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period.  Jungreis is sued in his capacity as owner, officer and/or agent of Yaaron.

25.    Jungreis possesses operational control over the corporate defendant, an ownership interest in Yaaron, and controls significant functions of the Defendants' real estate enterprise.

26.    Upon information and belief, Jungreis is the most senior officer and/or managing member of Yaaron, LLC.

27.    Upon information and belief, Jungreis is the most senior officer and/or managing member of Yaaron and Yaaron's affiliates.

28.    Based on a review of the New York City Department of Housing Preservation and Development's ("HPD") online property registration database, in Defendants' filings with HPD, Defendants identified Jungreis as the "head officer" of the entities that own/or manage 526 W. 161 and 645 W. 160.

29.    Upon information and belief, Jungreis, jointly with Rothman, determines the wages and compensation of the employees of Defendants, including Plaintiffs, maintains payroll records, has the authority to hire and fire employees, and he has exercised this authority by determining Plaintiffs' respective rates of pay.

*Rothman.*

30.    Upon information and belief, Rothman is an adult, natural person who maintains an office for the conduct of business at 38 East 29th Street, Fifth Floor, New York, New York and 261 Lenox Road, Brooklyn, New York.

31.    Upon information and belief, Rothman resides in Rockland County, New York.

32.    Rothman is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period.

33.    According to the HPD's online building registration records, Rothman is the registered Managing Agent of buildings where Plaintiffs were assigned by Defendants to perform work, including 645 W. 160 and 526 W. 161.

34.     Upon information and belief, Rothman managed the buildings where Plaintiffs performed work, supervised Plaintiffs' work, and he was responsible for the wage and hour practices affecting Plaintiffs.

35.     Upon information and belief, Rothman, together with Jungreis, determined the wages and compensation of the employees of Defendants, including Plaintiffs, maintains payroll records, and has the authority to hire and fire employees.

**Yaaron LLC**.

36.     Upon information and belief, Yaaron is a New York corporation doing business in New York County, New York, and it holds title to 645 W. 160.

37.     Upon information and belief, Yaaron maintains offices for the conduct of business at 38 East 29th Street, Fifth Floor, New York, New York and 261 Lenox Road, Brooklyn, New York.

38.     Defendants are an integrated enterprise, with common management, control, personnel policies, ownership, and inextricably intertwined operations and functioning, and they subject their employees to the same policies and procedures, in particular policies and procedures relating to the violations alleged in this Complaint.

## FACTUAL ALLEGATIONS

39.     As described herein, Defendants have, for years, knowingly engaged in unlawful business practices by: (a) requiring Plaintiffs to work numerous hours of overtime on a weekly basis without overtime compensation that Defendants were obligated to pay under the FLSA and NYLL; (b) paying Aquino flat weekly sums that resulted in effective hourly rates that fell below New York minimum wage rates; (c) illegally deducting sums from Colon's paychecks by, *inter alia*, failing to reimburse him for work-related tools of the trade; (d) paying wages to Plaintiffs through debit cards without Plaintiffs' valid prior consent and mandatory disclosures, which caused Plaintiffs to incur ATM fees to access their

wages; (e) failing to pay plaintiffs on a weekly basis within seven days after the workweek during which wages were earned, even though Plaintiffs were manual workers; and (f) failing to provide wage notices and wage statements containing all of the information required by the NYLL.

**Interstate Commerce.**

40.     Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

41.     Each day, materials originating out of state were utilized by Defendants and their employees, including Plaintiffs, to perform cleaning, maintenance and construction work at Defendants' Buildings.

42.     In performing their routine job duties, Plaintiffs were frequently called upon to handle and install flooring materials, faucets, toilets, refrigerators, carbon monoxide detectors, window guards, tiles and other items, all of which, upon information and belief, had been moved in interstate commerce. Handling and installing such items were integral to Plaintiffs' duties, and were essential aspects of Defendants' business operations.

43.     At all relevant times, Defendants employed Plaintiffs within the meaning of the FLSA and all other statutes referred to in this Complaint.

44.     At all relevant times, Defendants employed Plaintiffs within the meaning of the NYLL.

45.     Upon information and belief, at all relevant times, Defendants, who own and/or control buildings in New York City, have had gross revenues in excess of $500,000.00.

46.    At all relevant times, Defendants were associated and joint employers, act in the interest of each other with respect to employees, pay building maintenance employees by the same method, and share control over employees.

47.    Each of the Defendants possessed substantial control over the policies and practices over Plaintiffs' working conditions.

48.    Defendants jointly employed Plaintiffs and were Plaintiffs' employers within the meaning of 29 U.S.C. § 201 *et seq.* and the NYLL.

49.    In the alternative, Defendants were a single employer of Plaintiffs.

50.    Upon information and belief, Jungreis operates the Defendant Corporation as either an alter ego of himself and/or fails to operate Defendant Corporation as a legally separate entity apart from himself.

**Factual Allegations Relating to Wage Claims.**

**Colon.**

*Duties, Schedule and Wages.*

51.    Colon began working for Defendants in or about February 2016.

52.    Colon was hired by Rothman to serve as the superintendent of 645 W. 160.

53.    Initially, Defendants paid Colon $500.00 per week, which covered only the first forty hours Colon worked each week, with no compensation whatsoever for hours Colon worked in excess of the first forty per week.

54.    In or about 2017, Defendants raised Colon's wages to $600.00 per week, which also covered only the first forty hours Colon worked each week, with no wages for hours Colon worked in excess of the first forty per week.

55.    Not including time spent working on emergent issues and/or time spent on-call, at all relevant times, Colon's work schedule at 645 W. 160 involved working seven days per week, as follows: (a) weekdays: 7:00 a.m. to 5:00 p.m.; (b) Saturdays and Sundays:

8

approximately six hours each day.  As such, Colon typically worked an average of sixty-two (62) hours per week, excluding time spent on-call and handling unexpected emergencies.

56.    Colon was required, as a condition of his employment, to remain on-call, and his workweek substantially exceeded forty (40) hours.

57.    Defendants did not keep track of the number of hours Colon worked.

58.    Because the boiler at 645 W. 160 was decrepit and required constant attention, Colon was required to refill the boiler overnight, often every two hours, to ensure that residents had hot water. Overnight hours spent by Colon tending to 645 W. 160's boiler is not included in the foregoing estimate of Colon's hours worked.  Accounting for the filling of the boiler overnight, Colon conservatively estimates that he worked seventy (70) hours per week, exclusive of time spent addressing emergencies and also excluding time he spent working at another apartment building of Defendants.

59.    In addition to the above tasks and hours worked, Colon was regularly faced with emergent situations requiring immediate attention.  Solely by way of example, in June 2022, Colon had to address a burst pipe, which caused water to leak from the third to first floors of 645 W. 160.

60.    In connection with the foregoing emergent leak, Colon expended his own funds for supplies required for the repairs, and he was never reimbursed for these expenditures.

61.    Colon also had to remain on-call overnight to facilitate access to 645 W. 160 for emergency responders.

62.    In addition to his responsibilities at 645 W. 160, for a period of approximately seven (7) months in 2017 and 2018, Colon simultaneously filled in as superintendent at Defendants' approximately 25-unit apartment building located at 526 West 161st Street.

63.     During the foregoing period, when Colon shouldered the burden of simultaneously serving as superintendent of two apartment buildings, Colon worked additional hours, without additional pay.  It is conservatively estimated that Colon worked upwards of ninety (90) hours per week during this period.

64.     Initially, Defendants occasionally paid Colon additional sums for projects involving extensive renovation of apartments. However, Defendants discontinued this practice, and Colon then performed apartment turnover work, painting, and plumbing without additional remuneration.

65.     Colon was not paid one and one-half times his effective regular rate of pay for overtime hours (i.e., hours worked above the first forty hours per week).  Instead, Colon's weekly wages compensated him solely for his first forty hours of work.

66.     At all relevant times, Colon was required to use his own tools of the trade and cell phone for the performance of his duties, without any reimbursement of these expenses by Defendants.

67.     The tools of the trade that Colon provided, without any reimbursement from Defendants, included a floor buffer machine and drain snakes.

68.     Despite being a manual worker (with nearly all of his work having involved physical labor), Defendants unlawfully paid Colon every two weeks.

69.     Consequently, Defendants failed to properly pay Colon his wages within seven calendar days after the end of the week in which these wages were earned.

70.     Solely by way of example, Defendants paid Colon his wages on November 19, 2021, for the two-week pay period beginning November 1, 2021 and ending November 14, 2021.

71.     Month-after-month, Colon suffered stress and financial deprivation as a result of Defendants' unlawful delays in paying him for the work he performed during the first week of each two-week pay period.

72.     In 2022, when Colon took a vacation, he was required to pay, out-of-pocket, for another person to fill in for him at 645 W. 160, for which he never received any reimbursement.

73.     Defendants did not provide Colon with wage statements and notices in his native language of Spanish, and with the information required by the NYLL.

**Aquino:**

74.     From in or about March 2016 to approximately March 2023, Aquino was employed by Defendants as the porter at 645 W. 160.

75.     Aquino's job duties as porter included, *inter alia*, handling garbage and recycling, cleaning interior and exterior common areas, shoveling snow, cleaning up after leaks and other repair/maintenance issues, and generally assisting the superintendent.  All of the foregoing job duties involved manual labor.

76.     Aquino's typical work schedule involved working approximately sixty (60) hours per week, as follows: (a) Monday through Friday, from 7:00 a.m. to 5:00 p.m.; and (b) extensive hours on weekends, particularly each Sunday, when he had to handle garbage and recycling.

77.     Defendants paid Aquino a flat bi-weekly salary of $600.00 (*i.e.*, $300 per week) which covered the first forty (40) hours Aquino worked per week.  This resulted in Aquino's effective hourly wages falling below the applicable New York State minimum wage rate.

78.     For example, in 2018, the minimum wage rate applicable to New York City employers, such as Defendants, with eleven or more employees was $13.00 per hour.

Aquino's effective hourly rate of pay ($300 ÷ 40) was $7.50.  Therefore in 2018, Aquino was underpaid by $5.50 per hour ($220.00 per week) for minimum wages, alone.

79.    The fees incurred by Aquino in connection with Defendants' unlawful issuance of payroll debit cards, rather than cash or negotiable instruments, caused Aquino's wages to fall even further below the applicable New York State minimum wage rates.

80.    Defendants did not provide Aquino with any method to report the hours that he worked.

81.    Aquino's wages did not include any pay for overtime hours (hours worked above the first forty hours of work per week), even though his regular work schedule involved at least twenty (20) hours of overtime.

82.    Despite being a manual worker, Defendants unlawfully paid Aquino every two weeks.

83.    Consequently, Defendants failed to properly pay Aquino his wages within seven calendar days after the end of the week in which these wages were earned.

84.    Month-after-month, Aquino suffered stress and financial deprivation as a result of Defendants' unlawful delays in paying him for the work he performed during the first week of each two-week pay period. Aquino's distress arising from Defendants' untimely pay of his wages was particularly acute because of his poverty-level wages.

85.    Defendants did not provide Aquino with wage statements and notices in his native language of Spanish, and with the information required by the NYLL.

**Defendants' Unlawful Payment of Wages in the Form of Debit Cards.**

86.    Defendants paid Plaintiffs their wages biweekly through debit cards, a practice that resulted in Plaintiffs incurring ATM fees.

87.    As a result of the foregoing requirement, Plaintiffs incurred ATM fees that had the effect of reducing their wages and caused portions of their pay to be kicked back to Heartland Payment Systems ("Heartland"), the debit card issuer and/or Heartland's affiliates.

88.    Prior to demanding that Plaintiffs accept their pay in the form of debit cards, Defendants did not provide Plaintiffs with all of the mandatory disclosures in plain language, in both English and Plaintiffs' primary language (Spanish).

89.    Defendants' invalid issuance of Plaintiffs' wages in the form of debit cards caused portions of Plaintiffs' wages to be kicked back to Heartland Payment Systems.

90.    Upon information and belief, schedules of rules and fees relating to Heartland's PayAdvantage prepaid payroll debit cards are confusing and ridden with language and terminology that is technical and unlikely to be understood by lay persons.

### AS AND FOR A FIRST CAUSE OF ACTION
### FLSA Overtime Wage Violations, 29 U.S.C. §§ 201 *et seq.*
### (On Behalf of Colon and Aquino)

91.    Plaintiffs incorporate in this cause of action each and every allegation of the preceding paragraphs with the same force and effect as though fully set forth herein.

92.    At all relevant times hereto, the Defendants have been employers engaged in commerce, as defined under 29 U.S.C. § 203(b) and (d).  Defendants employed Plaintiffs as building maintenance workers, employment positions which engaged Plaintiffs in commerce, as defined under 29 U.S.C. §§ 203(b), (e), (g) and 29 U.S.C. § 207(a)(1).

93.    At all times relevant hereto, Defendants have been an "enterprise engaged in commerce or in the production of goods for commerce," as defined under 29 U.S.C. § 203(s)(1).

94.    In the performance of their duties for Defendants, Plaintiffs worked substantially more than forty (40) hours per week, yet did not receive overtime compensation

for the work, labor and services they provided to Defendants, as required by the FLSA, 29 U.S.C. §§ 206 and 207. The precise number of unpaid overtime hours will be proven at trial.

95.    Defendants' violations of the FLSA were willful violations of the FLSA, within the meaning of 29 U.S.C. § 255(a).

96.    As a result of the foregoing, Plaintiffs seek judgment against Defendants for all unpaid wages, including overtime wages owed by Defendants to Plaintiffs for the three-year period preceding the filing of this case, together with an award of an additional equal amount as liquidated damages, and costs, interest, and reasonable attorneys' fees, as provided for under 29 U.S.C. § 216(b).

## AS AND FOR A SECOND CAUSE OF ACTION
### New York Labor Law – Overtime Wages
### (On Behalf of Colon and Aquino)

97.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

98.    The overtime wage provisions of the NYLL, including Article 19, and its supporting regulations, apply to Defendants and Plaintiffs.

99.    Defendants willfully failed to pay Plaintiffs for all of the hours that they worked in excess of 40 hours in a workweek.

100.    Defendants willfully failed to pay Plaintiffs overtime at a rate of time and one-half their effective, regular hourly rate for hours worked in excess of 40 hours per workweek.

101.    Defendants willfully failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiffs.

102.    As a result of Defendants' knowing or intentional failure to pay Plaintiffs overtime wages for hours worked in excess of 40 hours per workweek, Plaintiffs are entitled to compensation for unpaid overtime, liquidated damages, attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

**AS AND FOR A THIRD CAUSE OF ACTION**
**New York Labor Law – Minimum Wages**
**(On Behalf of Aquino)**

103.    Plaintiffs incorporate in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

104.    The minimum wage provisions of the NYLL, including Article 19, and its supporting regulations, apply to Defendants and Aquino.

105.    During every year of Aquino's employment, Defendants, in violation of the NYLL, willfully paid Aquino less than the minimum wage in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor.

106.    Aquino's effective hourly rate of pay in 2017 was $7.50 ($300 ÷ 40).  This rate fell below the applicable minimum wage rates.  For example, Aquino's hourly wage of $7.50 was only one-half the applicable minimum wage of $15.00 in 2020.

107.    Aquino was damaged in amounts to be determined at trial.

108.    Due to Defendants' willful violations of the NYLL, Aquino is entitled to recover from Defendants his unpaid minimum wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**Defendants' Failure to Pay Wages in Negotiable Instruments**
**29 C.F.R. §§ 531.27(a), 531.35**
**(On Behalf of Colon and Aquino)**

109.    The FLSA and its supporting regulations require payment of wages "in cash or negotiable instruments at par."

110.    Defendants unlawfully failed and refused to issue negotiable instruments to Plaintiffs for payment of their wages.

111.    Instead, Defendants unlawfully issued wages to Plaintiffs in the form of pre-paid payroll debit cards from Heartland PayAdvantage, which resulted in Plaintiffs incurring fees and charges to access their wages.

112.    Defendants imposed on Plaintiffs the requirement of receiving their wages via debit card without their voluntary consent, and without offering Plaintiffs the opportunity of receiving their wages by paper check.

113.    Defendants never disclosed to Plaintiffs the extensive array of fees chargeable to Plaintiffs in connection with the payroll debit cards.

114.    Defendants did not provide valid disclosures to Plaintiffs of businesses and locations where Plaintiffs could obtain cash on demand in exchange for their payroll debit cards without incurring fees.

115.    The fees incurred by Plaintiffs in connection with Defendants' unlawful issuance of payroll debit cards, rather than cash or negotiable instruments, resulted in nonpayment of wages to Plaintiffs and/or unlawful kickbacks by virtue of the fees charged to Plaintiffs.

116.    Defendants' practice of paying wages to Plaintiffs in the form of payroll debit cards caused Plaintiffs to incur transaction and/or ATM fees exacerbated and increased the extent to which Plaintiffs were underpaid for their overtime hours.

## AS AND FOR A FIFTH CAUSE OF ACTION
### N.Y. Comp. Codes R. & Regs. tit. 12, §§, 192-2.3
### and 198-b
### (On Behalf of Colon and Aquino)

117.    Plaintiffs incorporate in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

118.    Defendants required Plaintiffs to receive their wages by pre-paid debit cards.

119.    Prior to implementing their practice of requiring Plaintiffs to accept wages in the form of payroll debit cards, Defendants did not provide Plaintiffs with "plain language" notices of Plaintiffs' options for receiving wages.

120.    Defendants did not provide Plaintiffs with a Spanish-language notice of locations within reasonable proximity where Plaintiffs could access and withdraw their wages at no charge.

121.    Defendants did not obtain valid and voluntary written consent from Plaintiffs prior to issuing wages by payroll debit cards.

122.    Upon information and belief, Defendants requirement that Plaintiffs accept wages via debit cards unlawfully imposed upon Plaintiffs a variety of potential fees, including fees for telephonic customer support, declined transaction fees, and ATM charges.

123.    Upon information and belief, Defendants received remuneration from the debit card issuer(s), card sponsor and/or from another third party for delivering wages by payroll debit cards.

124.    Defendants' practice of paying wages to Plaintiffs in the form of payroll debit cards, without providing prior notice required by N.Y. Comp. Codes R. & Regs. tit. 12, § 192-1.3(a), resulted in ATM fees that reduced Plaintiffs' wages and constituted kickbacks.

125.    Defendants' practice of paying wages to Plaintiffs in the form of payroll debit cards that caused Plaintiffs to incur transaction and/or ATM fees caused Aquino's effective hourly rate of pay to fall even further below the NYLL minimum wage rate.

126.    Defendants' practice of paying wages to Plaintiffs in the form of payroll debit cards that caused Plaintiffs to incur transaction and/or ATM fees exacerbated and increased the extent to which Plaintiffs were underpaid for their overtime hours.

127.    Defendants' practice of paying wages to Plaintiffs in the form of payroll debit cards that caused Plaintiffs to incur transaction and/or ATM fees had the effect of depriving Plaintiffs of their agreed-upon wages.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**NYLL § 191(1)(a) – Late Payment of Wages**
**(On Behalf of Colon and Aquino)**

128.    Plaintiffs incorporate in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

129.    The provisions of NYLL § 191 requiring the timely payment of wages, and the applicable supporting regulations, applied to Defendants and protect Plaintiffs. Consequently, Defendants were required to pay Plaintiffs weekly and not later than seven calendar days after the end of the week in which wages were earned.

130.    Defendants failed to pay Plaintiffs on a timely basis as required by NYLL § 191(1)(a).

131.    Due to Defendants' violations of NYLL § 191(1)(a), Plaintiffs  are entitled to recover the amounts of their untimely paid wages as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

132.    Plaintiffs have been damaged in amounts to be determined at trial.

133.    Due to Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover from Defendants liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**Illegal Deductions, New York Labor Law, Article 19 § 193**
**12 N.Y.C.R.R. § 2.10(a)**
**(On Behalf of Colon)**

134.    Plaintiffs incorporate each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

135.    In violation of the New York Labor Law, Article 19, § 193, Defendants unlawfully deducted wages from Colon by requiring Colon to spend his own money on work-related expenses, including tools of the trade to complete his work.

136.    For example, Colon paid, out of pocket and without reimbursement, the cost of plumbing snakes and a floor buffer machine.

137.    Colon was subject to further unlawful deductions from his wages because he had to pay, out of pocket, a worker who assisted him with his superintendent duties while he was on vacation.

138.    As a result of the foregoing, Colon seeks judgment against Defendants for reimbursement of unlawful deductions, as well as liquidated damages, and interest, and such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems just and proper.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### NYLL Wage Theft Prevention Act – Failure to Provide Wage Statements
### (On Behalf of Colon and Aquino)

139.    Plaintiffs incorporate in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

140.    The NYLL and Wage Theft Prevention Act ("WTPA") require employers to provide employees with an accurate wage statement each time they are paid.

141.    Defendants willfully failed to provide Plaintiffs with wage statements at the end of every pay period that correctly identified the name of their employer(s); address of employer; rates of pay or basis thereof; regular hourly rate; whether paid by the hour, shift, day, week, salary, piece, commission, or other; number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; and such other information as required by NYLL § 195(3).

142.    Due to Defendants' violations of the NYLL, Plaintiffs are entitled to recover from Defendants liquidated damages of $250.00 per work day that the violations occurred, or continue to occur, up to $5,000.00, together with costs, reasonable attorneys' fees, pre-judgment and post-judgment interest, and injunctive and declaratory relief, pursuant to the NYLL § 198(1-d).

### AS AND FOR A NINTH CAUSE OF ACTION
### NYLL Wage Theft Prevention Act (WTPA) – Failure to Provide Wage Notices
### (On Behalf of Colon and Aquino)

143.    Plaintiffs incorporate by reference in this cause of action the prior allegations of this Complaint as if fully alleged herein.

144.    The NYLL and WTPA, as well as the NYLL's interpretative wage orders, require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

145.    In violation of NYLL § 191, Defendants failed to furnish Plaintiffs, at the time of hiring or whenever there was a change to their rate of pay, with wage notices required by NYLL § 191.

146.    Due to Defendants' violation of NYLL § 195(1), Plaintiffs are entitled to recover from Defendants liquidated damages, together with reasonable attorneys' fees and costs of this action, pursuant to the NYLL § 198(1-b).

### RELIEF SOUGHT

**WHEREFORE,** Plaintiffs, RUDY A. COLON and ELVIN AQUINO, respectfully request that the Court grant the following relief:

1.    Declaring, adjudging and decreeing that Defendants violated the overtime provisions of the FLSA as to both Plaintiffs herein;

2.    Declaring, adjudging and decreeing that Defendants violated the minimum wage and overtime provisions of the NYLL as to Plaintiff Aquino;

3.      Declaring, adjudging and decreeing that Defendants violated the overtime provisions of the NYLL as to both Plaintiffs herein;

4.      Awarding Plaintiffs damages and restitution for unpaid compensation, unpaid minimum wages, unpaid overtime compensation, including interest thereon, and statutory penalties in amounts to be proven at trial, as well as liquidated damages;

5.      Awarding Plaintiffs liquidated damages in the amount of all untimely paid wages;

6.      Awarding Plaintiffs damages for all unlawful kickbacks;

7.      Awarding Plaintiffs damages and restitution for unlawful deductions in violation of the NYLL, including interest thereon, and statutory penalties in amounts to be proven at trial, as well as liquidated damages;

8.      Awarding statutory damages for Defendants' failure to provide Plaintiffs with statements and information required  by NYLL § 192-2.3, 198(1-b) and (1-d), and NYLL § 195(3);

9.      Awarding statutory damages for Defendants' violation of NYLL § 191 by failing to furnish Plaintiffs, at the time of hiring or whenever there was a change to their rates of pay, with wage notices required by NYLL § 191;

10.     Declaring that Defendants' violations of the NYLL were willful;

11.     For all other Orders, findings and determinations identified and sought in this Complaint;

12.     For prejudgment and post judgment interest on the amount of any and all economic losses, at the prevailing legal rate;

13.     For reasonable attorneys' fees and expenses of this action, pursuant to 29 U.S.C. § 216(b), New York Labor Law and as otherwise provided by law; and

14.     Such other relief as this Court deems just and proper.

## <u>JURY DEMAND</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the Complaint.

Dated:  New York, New York
      August 11, 2023                       **RAPAPORT LAW FIRM, PLLC**

/s/

By:  _____

Marc A. Rapaport
Rapaport Law Firm, PLLC
80  Eighth Avenue, Suite 206
New York, New York 10011
Ph: (212) 382-1600
mrapaport@rapaportlaw.com
*Attorneys for Plaintiffs*