Rapaport Law Firm, PLLC | Attorneys at Law | 80 Eighth Avenue | Suite 206 | New York, NY 10011 | Tel 212.382.1600 | Fax 212.382.0920 | www.rapaportlaw.com

**Rapaport Law Firm**

Marc A. Rapaport*
Tel (212) 382-1600
Fax (212) 382-0920
mrapaport@rapaportlaw.com

*Member NY & NJ Bars

October 30, 2024

**BY ECF**

Honorable John G. Koeltl
United States District Judge
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

      Re:    <u>Colon and Aquino v. Yaaron LLC et al.</u>
               Case No. 23-cv-07127(JGK)(HJR)

Dear Judge Koeltl:

      This firm represents plaintiffs, Rudy A. Colon ("Colon") and Elvin Aquino ("Aquino") (collectively, "Plaintiffs"), in the above-referenced matter, which involves claims for wage and hour violations arising from Plaintiffs' employment as maintenance workers. We write jointly with defendants Yaaron LLC ("Yaaron"), Aaron Jungreis ("Jungreis"), and Meir Rothman ("Rothman") (collectively, the "Settling Defendants"),[1] to request that the Court approve the settlement agreement (the "Agreement") reached by the parties herein as a fair and reasonable resolution of this matter. The fully-executed Agreement is submitted simultaneously with this letter as Exhibit 1 hereto. Plaintiffs' counsel further requests that the Court approve our firm's attorney's fees and costs.

      The Agreement reflects a desire by the parties to fully and finally settle Plaintiffs' Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") claims. The parties participated in a Court-annexed mediation on January 23, 2024, but were unable to agree upon a resolution. Thereafter, the parties engaged in formal written discovery, which included an exchange of wage and hour records. Prior to commencing depositions, the parties renewed their settlement efforts by participating in private mediation. Plaintiffs actively participated in the mediation through a Spanish-language interpreter. After a full-day mediation session on August 23, 2024, the parties reached a settlement in principle. Thereafter, the parties drafted and extensively negotiated, over a period of approximately six weeks, the terms of the Agreement.

---

[1] Plaintiffs seek to dismiss their claims without prejudice against defendant Yonah Halton, who defaulted by failing to respond to the Complaint and Amended Complaint.

As explained in further detail below, the parties respectfully aver that the proposed settlement agreement is fair, reasonable, and equitable.

### I.   Introduction.

As Plaintiffs' claims arise, in part, under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, the Agreement must be approved by this Court. *See, Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). In evaluating whether a proposed settlement is fair and reasonable, "a court should consider the totality of circumstances including, but not limited to, the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-336, (S.D.N.Y. 2012) (citations and quotation marks omitted). As set forth below, the parties believe that the Agreement satisfies all of the foregoing factors.

### II.   Summary of Plaintiffs' Factual Allegations and Damage Calculations.

### 1.   Plaintiffs' Minimum Wage and Overtime Claims.

Plaintiffs were employed as maintenance workers at an apartment building located at 645 West 160th Street, New York, NY (the "Building"). The corporate defendant, Yaaron, holds title to the Building. Plaintiffs allege that the individual defendants, Jungreis and Rothman, had the status of their employers by virtue of the control they exercised over the Building's operations. Defendants contend that the individual defendants (particularly Jungreis) do not meet the criteria for joint employer status.

Colon served as the Building's Superintendent from in or about February 2016 to in or about May 2023. In addition to his superintendent duties, Colon handled painting and renovation work, for which he sporadically received non-wage payments. Furthermore, for approximately seven months in 2017 and 2018, Colon simultaneously worked for Defendants as the superintendent of an apartment building located at 526 West 161st Street, New York, NY. Colon alleges that with limited exceptions relating to non-superintendent work, Defendants paid him the same, flat weekly wages regardless of the number of hours he worked. During the applicable NYLL limitations period, Defendants paid Colon $600.00 per week. Colon alleges that these wages only compensated him for the first forty hours he worked each week, even though he typically worked sixty-two hours each week. Am. Compl., ECF No. 26, ¶¶ 80 - 82.

Aquino was the Building's porter from approximately 2016 to March 2023. Aquino estimated that he worked an average of sixty hours per week. Aquino alleges that his flat weekly wages of $300.00 per week only compensated him for the first forty hours he worked each week. *Id.* at ¶ 105. Based on the foregoing, Aquino alleges that he is owed minimum wages under the NYLL, and overtime wages under both the NYLL and FLSA. *Id.* at ¶¶ 106, 109.

Given the lack of documentary evidence regarding the number of days or hours Plaintiffs worked in any given week, Plaintiffs' allegations regarding their typical work schedules are based solely on their recollections. As explained below, Defendants dispute Plaintiffs' contentions regarding their typical weekly work schedules.

### 2. Plaintiffs' Calculations of their Potential Minimum Wage and Overtime Damages.

Plaintiffs calculated their best-case, potential overtime damages based on the rebuttable presumption in the Second Circuit that a fixed salary covers 40 hours. *See, e.g., Perez v. Platinum Plaza 400 Cleaners, Inc.,* No. 12-cv-9353, 2015 U.S. Dist. LEXIS 54066, *6-7 (S.D.N.Y. Apr. 24, 2015); *Keun-Jae Moon v. Gab Kwon,* 248 F. Supp. 2d 201, 207 (S.D.N.Y. 2002); *Giles v. City of New York,* 41 F. Supp. 2d 308, 316-217 (S.D.N.Y. 1999).

**Colon.**

Colon asserts overtime claims under the FLSA and NYLL. At the second mediation, Colon calculated his best-case, estimated damages based on average workweeks of approximately fifty-eight hours. If a trier of fact were to fully credit Colon's allegations regarding the number of hours he worked each week (*i.e.*, 58 hours every week), Colon could potentially recover unpaid overtime in the amount of $405 per week ($600 ÷ 40 = $15.00 x 1.5 = $22.50 x 18 hrs. = $405.00). After deducting weeks when Colon took off from work, Colon estimates that he could potentially recover $131,220 over the six-year NYLL limitations period (324 weeks x $405 = $131,220) for unpaid overtime wages. The foregoing does not include liquidated damages or interest. Colon has the benefit of the burden of proof having shifted due to Defendants' failure to accurately keep track of Colon's work hours. However, Colon would still face the challenge of providing sufficiently detailed and credible testimony regarding the hours he worked over a period of six years.

Colon faces a risk that his NYLL overtime claims may fail as a result of New York's janitor exemption, 12 NYCRR Part 141-3.4. This exemption allows employers to designate one person as a residential building's "janitor," whose rate of pay is based on the number of units. If the employer does so, the designated janitor is exempt from overtime requirements under the NYLL. If Colon were found to be exempt, his overtime claims would be limited to the three-year FLSA limitations period, which would reduce his damages by more than at least 50%. He would have no claim to any overtime damages for the period 2017 through August 11, 2020. In this instance, based on the FLSA's three-year limitations period, Colon's potential overtime damages total, at most, $58,320.00.[2] If Defendants' violations were not found to be willful, Colon's potential damages under the FLSA would be limited to two years, and would thus be further reduced to approximately $40,000.00, excluding liquidated damages and interest.

---

[2] This is less than one-half the amount of potential NYLL overtime damages because the NYLL limitations period was extended by 228 days under Executive Order No. 202.8 (9 NYCRR 8.202.8).

**Aquino.**

Aquino asserts claims for minimum wages under the NYLL and overtime wages pursuant to both the NYLL and FLSA. Aquino's flat weekly pay was $300.00 per week during the entire six-year NYLL limitations period. Aquino alleges in the Amended Complaint that he typically worked sixty hours per week. Am. Compl., ECF No. 26, at ¶104. Defendants countered that Aquino was a part-time worker. As the case progressed, Aquino took a more conservative approach. At the second mediation, Aquino calculated his best-case, estimated damages based on average workweeks of approximately fifty hours. Defendants continued to take the position that Aquino worked only part time.

Based on Aquino's assertion that he worked full time, Aquino's effective, regular hourly pay rate was $7.50 per hour ($300.00 ÷ 40 = $7.50), which was below New York's minimum wage rates during the entire NYLL limitations period. As years progressed, and New York's minimum wage rates increased, the minimum wage shortfall increased. In 2017, when the applicable, New York minimum wage rate was $11.00 per hour, Aquino was underpaid $3.50 per hour. In 2018, when the applicable, hourly minimum wage rate was $13.00 per hour, Aquino was underpaid $5.50 per hour. In total, for the entire NYLL limitations period, Plaintiffs estimate that Aquino's potential damages for unpaid minimum wages, excluding liquidated damages and interest, total $83,360.00. Defendants countered that Aquino only worked 25 hours per week.

Aquino also asserts overtime claims under both the NYLL and FLSA. Based on Aquino's position that he worked an average of 50 hours per week (reduced from the 60 hours that were alleged in the Amended Complaint), Plaintiffs estimated that Aquino could potentially recover $66,960.00 in unpaid overtime wages, excluding liquidated damages and interest. Plaintiffs' weekly damages charts are available should the Court determine that they would be helpful in evaluating the fairness of the Agreement.

### 3. Wage Statement and Wage Notice Violations.

Plaintiffs also assert claims for statutory damages under the NYLL for Defendants' failure to provide accurate wage statements. Plaintiffs allege that Defendants failed to provide them with wage statements at the end of every pay period that correctly identified the name of the employer; address of employer; rates of pay or basis thereof; regular hourly rate; whether paid by the hour, shift, day, week, salary, piece, commission, or other; number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; and such other information as required by NYLL § 195(3). Plaintiffs allege that under NYLL § 198(1-d), they are entitled to statutory damages of $250.00 per work week, up to a cap of $5,000.00. Plaintiffs also assert claims for statutory damages for Defendants' failure to provide them with wage notices at the time of hiring, and upon changes to their salary. Plaintiffs' wage notice and wage statement claims potentially add $10,000 to the value of each of their claims. The success of Plaintiffs' wage statement and wage notice claims would largely hinge on whether Plaintiffs establish that these violations caused concrete injuries.

**4. Untimely Pay.**

The Amended Complaint's Sixth Cause of Action alleges that Defendants failed to comply with § 191(1)(a)(i) of the New York Labor Law (NYLL), which requires weekly payment of wages to manual workers. Potentially, Plaintiffs could recover liquidated damages for the first week of each two-week pay period. This claim could potentially add approximately $97,800 to Colon's damages, and $48,000 to Aquino's damages.

**III.   Defendants' Position.**

Defendants assert that Colon is not entitled to any overtime pursuant to the New York Labor Law as janitors in residential buildings are exempt from overtime. 12 N.Y.C.C.R. § 141-1.4. As Colon was the sole janitor in charge of the care and maintenance of the Building, he would be exempt from overtime pursuant to the New York Labor Law. 12 N.Y.C.C.R. § 141-3.4. Accordingly, it is Defendants' position that Colon's overtime claims would at best go back two or three years (if willful) pursuant to the FLSA, which would significantly decrease any damages Colon would be entitled. Further, pursuant to the FLSA, Defendants would be able to take a credit for the reasonable value and fair cost for the lodging provided to Colon.

Defendants dispute that Plaintiffs were not properly paid overtime or minimum wages. Defendants have asserted that neither of the Plaintiffs ever worked more than forty hours per week. Indeed, Aquino was a part-time employee, whose weekly work schedule entailed twenty-five hours of work. Quite simply, Plaintiffs were duly paid for all the hours they worked. Defendants assert that the job duties Plaintiffs were assigned would require substantially fewer hours then the number of hours claimed by Plaintiffs. Plaintiffs' assertions regarding the number of hours they worked are unbelievable. Defendants further note that courts considering claims by janitors/superintendents have recognized the difficulty by plaintiffs to demonstrate that they actually worked overtime and/or the hours claimed. *See e.g.*, *Daniels v. 1710 Realty, LLC,* 2011 U.S. Dist. LEXIS 91902 (E.D.N.Y. Aug. 17, 2011). Defendants assert that to the extent there were any wage violations, such violations would not warrant liquidated damages because Defendants believed in good faith that they complied with the law.

With respect to wage notices and statements, Defendants contend as an affirmative defense that Plaintiffs are not entitled to such statutory damages since Plaintiffs were paid all compensation they were entitled to pursuant to law.

**IV.   The Agreement is Fair and Reasonable.**

For the reasons explained above, there is a risk of Colon being deemed exempt under the janitor exemption, which would reduce his overtime damages by more than 50%. Furthermore, as noted above, Jungreis and Rothman have adamantly disputed Plaintiffs' contention that they had the status of Plaintiffs' joint employers. Although Jungreis has an ownership interest in

Yaaron, information provided in connection with the two mediations raised questions about whether Jungreis was involved in personnel decisions. There is, at a minimum, uncertainty regarding Jungreis' status as a joint employer. The corporate defendant, Yaaron, is a single-asset LLC, its sole asset being the Building. Defendants have provided information suggesting that the Building faces spiraling financial problems resulting from claims filed by New York City and the Building's tenants. Consequently, Plaintiffs and their counsel had legitimate concerns about the collectability of a judgment against the Defendants. *See, Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. June 6, 2013) (citing *Cabrera v. Roselea Int's Services*, 2011 U.S. Dist. LEXIS 8540, 2011 WL 7096634 at *4 (M.D. Fla. Dec. 30, 2011)).

The parties were able to reach an agreement before incurring the costs and stress of depositions, motion practice and trial. *See Burgos v. San Miguel Transp., Inc.*, 2016 U.S. Dist. LEXIS 166248, *6, 2016 WL 7015760 (S.D.N.Y. Dec. 1, 2016)(citing the relatively early stage of the case as one of the factors supporting the fairness of a settlement that was substantially below the amount that plaintiff initially contemplated). Furthermore, here, as in *Burgos*, there is no assurance that Plaintiffs could be awarded liquidated damages under FLSA or NYLL if this matter were to proceed to trial.

The Agreement represents a reasonable compromise. Adopting the most optimistic assessment of Colon's possible recovery, Plaintiffs' counsel estimates that if Colon were deemed non-exempt under the NYLL, and if a trier of fact were to credit his claims regarding the number of hours he worked per week, Colon could potentially recover $271,000 for unpaid overtime, which includes liquidated damages. He could also recover statutory interest of at least $46,000.00. Adding potential damages for untimely payment of wages ($97,800.00) and wage notice/statement damages ($10,000), Colon's maximum recovery is approximately $424,800.00. However, because of the risks described above (particularly the risks posed by the janitor exemption and the possibility that a judgment would be difficult to collect), the compromise Colon is making to reach a settlement is a reasonable one. *See, e.g., Santiago v. Agadjani*, 2024 U.S. Dist. LEXIS 186484, *10 (E.D.N.Y. Oct. 11, 2024) (collecting cases where judges have found recoveries of 13% and 15% to be reasonable).

As noted above, Plaintiffs' counsel estimates that Aquino could potentially recover $83,360 for unpaid minimum wages and $66,960 for unpaid overtime wages, excluding liquidated damages and statutory interest. In addition, he could potentially recover $10,000 for his NYLL wage statement/wage notice claims and $48,000 for his NYLL untimely pay claims. Therefore, his compromise to reach a settlement is at least as substantial, if not greater, than that of Mr. Colon. However, Mr. Aquino faces health challenges that would make it particularly burdensome for him to undergo a deposition and trial. Furthermore, like Mr. Colon, he faces the uncertainty of establishing the number of hours he worked based on his recollection.

### V.     Plaintiffs' Counsel's Application for Attorneys' Fees.

Under both the FLSA and NYLL, Plaintiffs are entitled to recover attorneys' fees and costs. Attorneys' fees in FLSA settlements are examined to ensure that the interests of plaintiff's counsel in his or her own compensation did not have an adverse impact on the extent of relief

counsel obtained for the client. *See, Wolinsky v. Scholastic*, 900 F.Supp.2d 332, 336 (S.D.N.Y. 2012).

Plaintiffs' counsel represents Plaintiffs on a contingent basis, pursuant to a retainer agreement that provides for attorneys' fees of one-third of the net recovery. A copy of Plaintiffs' counsel's retainer agreement with Plaintiffs is attached hereto as Exhibit 2. Our firm's time spent on this matter and the expenses that we reasonably incurred are set forth in the accurate and contemporaneous billing records attached hereto as Exhibit 3. Invoices/receipts for Rapaport Law Firm's expenses and costs are attached hereto as Exhibit 4.

Contingency fees of one-third are routinely approved in this Circuit. *See, Sierra v. Mid City Gym and Tanning LLC*, No. 16 Civ. 2892, 2017 WL 4862070 *4 (S.D.N.Y. Oct. 25, 2017); *Gaspar v. Personal Touch Moving, Inc.*, No. 13 Civ. 8187, 2015 WL 7871036 *2 (S.D.N.Y. Dec. 3, 2015). Of the total amount ($51,298.48) payable to Plaintiff's counsel, $2,684.30 is for expenses (primarily consisting of filing fees, service of process, and mediation costs). The balance, $48,614.18, is for legal fees. The legal fees are thirty-three percent (33%) of the net settlement (*i.e.*, 33% of $147,315.70 = $48,614.18). All of the requested expenses were necessary for the prosecution of Plaintiff's claims.

The amount Plaintiffs' counsel seeks under the percentage method (1/3 of the net settlement) results in a lodestar multiplier of less than 1.1. This is appropriate in light of the fact that "[c]ourts regularly award lodestar multipliers from two to six times the lodestar." *See Johnson v. Brennan*, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376 at *20 (S.D.N.Y. Sept. 16, 2011) (collecting cases).

The attorneys and staff at Rapaport Law Firm who were involved in this case, and whose time is reflected in the attached billing records, are:

1. **<u>Marc Rapaport</u>**

I am the managing member of Rapaport Law Firm, which began as my solo practice in 1995. I have more than twenty-five years of experience litigating employment matters, including matters touching upon nearly every aspect of wage and hour law, on behalf of employees in New York. I received a J.D. from Georgetown University Law Center in 1992. Thereafter, I worked as a Staff Attorney with the United States Department of Justice in Washington, D.C. I represent employees in a broad range of discrimination and wage/hour matters. I am an active member of the National Employment Lawyers Association and the National Employment Lawyers Association New York.

I have endeavored to represent immigrant workers who often find it difficult to obtain skilled legal representation. For approximately the past eight years, my law practice has particularly focused on representing low-wage superintendents, porters, and other maintenance workers who are employed at apartment buildings in New York City. My requested hourly rate of $450.00 is well within the range of what judges in this district have approved for wage and hour attorneys with similar levels of experience. *See, e.g., Palaguachi v. All City Remodeling,*

*Inc.*, 2018 U.S. Dist. LEXIS 241268, at *6 (S.D.N.Y. Apr. 20, 2018) (approving hourly rate of $450.00 for partner in FLSA matter). My requested hourly rate is significantly below the hourly rates I currently charge (beginning at $600.00) for non-contingent cases.

My wage and hour cases include, among others: *Gaitan et al. v. 3808 Boston Road Car Wash, Inc., et al.* 08-cv-11137 (SDNY); *LeBlanc v. Soho House New York, LLC et al.*, 09-cv-07474 (SDNY); *Armas et al. v. SKYC Management LLC et al.*, 14-cv-6360 (SDNY); *Castillo et al. v.140 Ash Associates, LLC, et al.*, 16-cv-5216 (EDNY); *Deleg v. Croman Real Estate, Inc. et al.,* 16-cv-07762 (SDNY); *Contrera, et al. v. Langer, et al,* 16-cv-03851 (SDNY) ($7.4 Million wage settlement); *Flores, et al. v. Claremont Properties. LLC, et al.*, 17-cv-001316 (SDNY); *Feliz v. Parkoff Operating Corp., et al.*, 17-cv-07627 (SDNY); *Amadis v. New Castle Realty Servs., et al*, 17-cv-06693 (SDNY); *Montalvo, et al. v. Arkar, Inc. et al*, 17-cv-06693 (SDNY); *Romero v. 1829 Realty Associates, LLC et al.*, 17-cv-00662 (EDNY); *Mercedes v. Claremont Properties,* 18-cv-01268 (SDNY); *Valdovinos v. 9300 Realty Management Inc., et al.*, 18-cv-2102 (SDNY); *Ramirez v. Superior One Management Corp., et al.*, 19-cv-02287 (SDNY); *De La Rosa v. Chestnut Holdings of New York, Inc., et al.*, 19-cv-00286 (SDNY); *Ramirez v. Superior One Management Corp.*, 19-cv-02287 (SDNY); *Luna v. Marquis Realty Inc.,* 19-cv-01709 (SDNY); *Martinez, et al. v. Barberry Rose Mgmt Co., Inc., et al.*, 19-cv-06744 (EDNY); *Campos v. Aegis Realty Management Corp.*, 19-cv-02856 (SDNY); *Liz, et al. v. 5 Tellers Associates, L.P., et al*, 20-cv-00212 (EDNY); *Artiles v. Superior One Management Corp.*, 20-cv-1809 (SDNY); *Pichardo v. United Chelsea, LLC, et al.* 20-cv-4706 (SDNY); *Ramirez v. Arbeni Management Company, Inc.*, 21-cv-2759 (SDNY); *Acosta v. Superior One Management Corp.*, 21-cv-1163 (SDNY); *Trinidad v. 62 Realty, LLC, et al.*, 22-cv-00101 (SDNY); *De la Cruz v. Arbeni Management Company, Inc.*, 22-cv-00979 (SDNY); *Gomez, et al. v. Carroll Flats LLC*, 22-cv-01493 (EDNY); *Ramirez v. Citictore Asset Mgmt Inc., et al.*, 22-cv-03802; and *Lopez v. JPD Restaurant LLC, et al.*, 24-cv-00605 (SDNY),

2. **Karina Gulfo**

Karina Gulfo has been a paralegal at Rapaport Law Firm since August 2018. Ms. Gulfo speaks fluent Spanish. Because of her language skills, Ms. Gulfo served a crucial and effective role in our firm's representation of Plaintiffs. Ms. Gulfo has performed FLSA damage calculations in multiple FLSA/NYLL cases since she joined Rapaport Law Firm. In this matter, Ms. Gulfo served as a primary point of contact for Mr. Colon and Mr. Aquino. Ms. Gulfo has played the same, crucial role for our firm's Spanish-speaking clients in at least a dozen other FLSA matters, including collective and class action cases involving hundreds of workers. Prior to joining our firm, Ms. Gulfo worked as a paralegal for a law firm in Bronx County, providing support in both criminal and civil matters. The hourly rate for Ms. Gulfo ($115.00) is amply justified by her experience.

3. **Samantha Bourdierd**

Samantha Bourdierd has been a legal assistant at Rapaport Law Firm since February 2024. Ms. Bourdierd is fluent in Spanish, which has made her a valuable resource for Spanish-speaking clients. This was particularly important in this case, where she handled communications

with Mr. Aquino. Notably, Ms. Bourdierd assisted Mr. Aquino with the challenges he faced in connection with the initial, Court-annexed mediation session. At the time, Mr. Aquino was recovering from surgery. Consequently, Mr. Aquino had to participate in the mediation remotely, from his home. Ms. Bourdierd traveled to Mr. Aquino's residence, and she assisted Mr. Aquino with his technological and language challenges, thus enabling him to fully participate in the mediation. Ms. Bourdierd communicated in Spanish with both Plaintiffs during the lengthy discovery process. She also met with witnesses. The hourly rate for Ms. Bourdierd ($95.00) is amply justified by the important role she played in this case.

We respectfully request that the Court approve the Agreement, as well as the amount of legal fees requested herein. Should Your Honor have concerns regarding this settlement, the parties are happy to discuss them. The parties thank the Court for its attention to this matter.

Respectfully yours,

/s/

Marc A. Rapaport

Encs. (Exhibits 1 – 4)

cc: Regina E. Faul, Esq. (*Via ECF only*)